**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| JOHN MILES FOSTER, | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. |
|  | : | 1:03-CV-1876-RWS |
| CLAYTON COUNTY JUDICIAL CIRCUIT OF THE STATE OF GEORGIA, et al., | : | |
| Defendants. | : | |

## **ORDER**

Now before the Court are (I) Plaintiff's Motion for Summary Judgment [75]; (ii) Defendants' Motion for Leave to File Excess Pages [80]; (iii) Defendants' Motion for Summary Judgment [82]; (iv) Plaintiff's Motion for Copy of Defendants' Motion for Summary Judgment and Motion for Extension of Time [84]; and (v) Plaintiff's Motion for Case Status and Judicial Oversight [86]. After considering the entire record, the Court enters the following Order.

**Background**

In 1994, Plaintiff John Miles Foster pled guilty to one count of murder, one count of possession of a firearm during the commission of a crime, and one count of concealing the death of another.  He was sentenced to life, five years, and twelve months imprisonment to run concurrently.

Plaintiff Foster filed this action pursuant to 42 U.S.C. § 1983 against numerous county and state officials and agencies.  (See Foster, et al. v. Clayton Judicial Circuit, et al., No. 1:03-CV-1097-RWS (N.D. Ga. filed July 2, 2003).) Although Plaintiff originally sought to file a joint civil rights action with two other Plaintiffs, this Court by an Order entered July 9, 2003, dismissed that action and directed the Clerk to open a new civil rights action on behalf of each Plaintiff. (See Order of July 2, 2003 [3] at 2.)  On August 6, 2003, Plaintiff filed a document captioned "Supplemental Pleading" which this Court construed as Plaintiff's Amended Complaint.  (See Order of Apr. 16, 2004 [12] at 2-3.)  In his complaint, as amended, Plaintiff alleges that various prison policies, judicial practices, and decisions of the Board of Pardons and Paroles ("Parole Board") violate his rights under the Due Process, Equal Protection, and Ex Post Facto

2

Clauses, as well as his right of access to the courts arising under the First and

Fourteenth Amendments.

The Court conducted a frivolity review pursuant to 28 U.S.C. § 1915A.

As a result of that review, the Court dismissed Plaintiff's claims challenging the

validity of his conviction and sentence and determined that a number of

defendants should be dismissed from the action.  However, the Court

concluded that Plaintiff's remaining claims were not "indisputably meritless" and

Ordered the remaining Defendants to be served.  (See Order of Apr. 16 [12].)

The litigation has proceeded and both parties have now moved for summary

judgment.

## Discussion

## I.  Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment shall

be granted "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  FED. R. CIV. P. 56(c).  "The moving party bears

'the initial responsibility of informing the . . . court of the basis for its motion,

3

and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, which

it believes demonstrate the absence of a genuine issue of material fact.' "

Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004)

(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.

Ed. 2d 265 (1986) (internal quotations omitted)).  Where the moving party

makes such a showing, the burden then shifts to the non-movant, who must go

beyond the pleadings and present affirmative evidence to show that a genuine

issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  The applicable substantive

law identifies which facts are material.  Id. at 248.  A fact is not material if a

dispute over that fact will not affect the outcome of the suit under the governing

law.  Id.  An issue is genuine when the evidence is such that a reasonable jury

could return a verdict for the non-moving party.  Id. at 249-50.

    In determining a motion for summary judgment, the court must view all

evidence and draw all reasonable inferences in the light most favorable to the

non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th

Cir. 2002).  But, the court is bound only to draw those inferences which are

AO 72A
(Rev.8/82)

reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts.").

## II.    Preliminary Matters

Before turning to the merits of the cross-motions for summary judgment, the Court addresses some preliminary issues.  First, on June 13, 2005, Plaintiff filed a Motion requesting a copy of Defendants' Motion for Summary Judgment as well as an extension of time to file his response [84].  Thereafter, Plaintiff was served with a copy of Defendants' Motion for Summary Judgment and has since filed his response thereto.  (See Pl.'s Br. in Resp. to Defs.' Mot. for Summ. J. [85] at 2.)  Therefore, insofar as Plaintiff requested a copy of

5

Defendants' Motion, that request is **DENIED as moot**; insofar as Plaintiff requested additional time to file his response, that request is **GRANTED *nunc pro tunc***.  Second, Defendants' Motion for Leave to File Excess Pages [80] in response to Plaintiff's Motion for Summary Judgment is **GRANTED *nunc pro tunc***.

### III.   Claims against Defendant Center for Prisoner's Legal Assistance, P.C. and Defendant Steve Pepering in his official capacity

In Plaintiff's pleadings, as construed by this Court, he has alleged that Defendant Center for Prisoner's Legal Assistance, P.C. ("CPLA") failed to provide updated case law to Plaintiff, and otherwise refused to either aid or provide legal assistance as required under state law, and that Plaintiff was prejudiced in the prosecution of potentially meritorious claims by this failure. Defendant CPLA moved for, and was denied, dismissal of Plaintiff's claims. (See Order of Mar. 3, 2005 [64] at 4.)

Since the Court's Order was entered, all mail to counsel for Defendant CPLA has been returned as undeliverable, and Defendant CPLA does not appear to have answered Plaintiff's complaint.  Additionally, Defendant CPLA is not a party to the Defendants' Motion for Summary Judgment which is

AO 72A
(Rev.8/82)

presently before the Court.[1]  In view of the foregoing, the large number of

Defendants, and the confusing nature of Plaintiff's pleadings and claims

asserted, the Court notes, for purposes of clarity, that the claims against

Defendant CPLA remain in this action.  As Defendant CPLA has not joined in

the motion for summary judgment by Defendants which is presently before the

Court, its resolution of that motion has no bearing on the claims against the

CPLA.

**IV.**   **Claims against the Atlanta and Clayton Judicial Circuits, State Board of Pardons and Paroles, Georgia Department of Corrections, State of Georgia Attorney General's Office, and the Judicial Qualifications Commission for State of Georgia**

Plaintiff names the above Defendants as parties to this action and

apparently seeks declaratory, injunctive, and possibly monetary relief.  Although

Defendants offer general argument as to why the moving parties are entitled to

summary judgment, they do not present any argument specifically addressing

the viability Plaintiff's claims against these Defendants.

---

[1] Although the docket in this matter reflects that a response to Plaintiffs Motion for Summary Judgment on behalf of CPLA was filed on May 27, 2005, (see Dkt. Nos. 78, 80, 81, 82), a review of those filings reveals that Defendant CPLA did not join in those motions.    Therefore, the Clerk is **DIRECTED** to correct the docket to reflect that Defendant CPLA is not party to the above motions.

7

To this point, Plaintiff has been allowed to proceed *in forma pauperis* in this action under 42 U.S.C. § 1983.  Pursuant to 28 U.S.C. § 1915(e)(2), a court shall dismiss a case, or specific claims within a case, at any time it determines that the action is frivolous or malicious, fails to state a claim, or seeks relief from a defendant who is immune to such relief.  28 U.S.C. § 1915(e)(2)(B); cf. Lovelace v. DeKalb Cent. Probation, 144 Fed. Appx. 793, 794 (11th Cir. 2005) (affirming district court dismissal of certain claims under § 1915(e)(2) on Eleventh Amendment Immunity grounds while allowing remaining claims to proceed).  Although not expressly raised by Defendants in this action, the Court first addresses the issue of immunity under the Eleventh Amendment.  Cf. McClendon v. Ga. Dept. of Cmty. Health, 261 F.3d 1252, 1259 (11th Cir. 2001) (noting that court may raise issue of Eleventh Amendment immunity on its own motion).

Absent abrogation of immunity by Congress, "[t]he Eleventh Amendment protects a State from being sued in federal court without the State's consent." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2002).[2]  "It is also well-settled

---

[2] As noted above, Plaintiff brings this action under § 1983.  In enacting § 1983, Congress did not override the states' sovereign immunity.  Quern v. Jordan, 440 U.S. 332, 342, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979).

that Eleventh Amendment  immunity bars suits brought in federal court when the State itself is sued and when an 'arm of the State' is sued." Id.  The Eleventh Amendment precludes suit irrespective of whether a plaintiff seeks monetary, injunctive or declaratory relief.  Stevens v. Gay, 864 F.2d 113, 115 (11th Cir. 1989) ("Th[e] Eleventh Amendment bar applies regardless of whether the plaintiff seeks money damages or prospective injunctive relief.")

Without question, the Eleventh Amendment bars suit against the Georgia Attorney General's Office itself, Atlanta and Clayton Judicial Circuits, the Georgia Department of Corrections, see Miller v. King, 384 F.3d 1248, 1260 (11th Cir. 2004) (holding that claims against the Department of Corrections are barred by the Eleventh Amendment); Stevens v. Gay, 864 F.2d 113, 115 (11th Cir. 1989) (same), the Georgia State Board of Pardons and Paroles, see Fuller v. Ga. State Bd. of Pardons and Paroles, 851 F.2d 1307, 1309 (11th Cir. 1988) (claims against Georgia Board of Pardons and Paroles barred by Eleventh Amendment), and the Judicial Qualifications Commission for the State of Georgia.  See Hosch v. Bayneum, Civil Action No. 1:93-cv-00112-HTW (N.D. Ga. 1993) (dismissing action against Judicial Qualifications Commission on grounds of Eleventh Amendment immunity), aff'd, 19 F.3d 37 (11th Cir. 1994).

9

Therefore, Plaintiff's claims against these Defendants are hereby **DISMISSED**

pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii).

**V.      Plaintiff's Motion For Summary Judgment**

Throughout the course of this litigation, and in numerous and confusing

filings, Plaintiff has asserted a number of claims against the named Defendants

which, in his view, generally arise from a state-wide conspiracy to lengthen the

term of incarceration for indigent defendants in order to fraudulently obtain

federal prison grant money.  Many of these claims relate directly to Plaintiff's

belief that he is wrongfully incarcerated on the basis of a "void judgment" and

his perceived inability to obtain meaningful review of his conviction.

Additionally, however, Plaintiff has complained of, inter alia, the retroactive

application of parole guidelines, the refusal to accept and docket duly filed

motions, the freezing of his inmate account, the requirement that he maintain a

minimum balance of ten dollars in that account, and the differential treatment

received by unrepresented prisoners, as compared to those represented by

counsel.  (See generally Second Amended Complaint [6].)  Plaintiff alleges that

these actions violate his rights under the Due Process, Equal Protection, and Ex

10

Post Facto Clauses, as well as his right of access to the courts arising under the First and Fourteenth Amendments. (See Order of Apr. 16, 2004 at 7-12.)

Notwithstanding these broad claims and the fact that Plaintiff seeks summary judgment against all Defendants, in his Motion for Summary Judgment [75-1], Plaintiff requests only limited relief against certain Defendants. Specifically, Plaintiff requests (1) that this Court issue a "declaratory judgment against Defendants Benefield and Clayton Judicial Circuit, stating the Procedures used against Plaintiff in reviewing his Claim of 'Void Judgment' [are] illegal and must not be used against Plaintiff in future filings"; (2) that this Court compel Defendant Clayton Judicial Circuit to "docket and accept a new 'Extraordinary Motion' from Plaintiff without 'fee charge,' to determine in open court, with Plaintiff present, the issue of 'Void Judgment' "; and (3) that this Court stay all other proceedings pending Defendants' compliance with the relief requested in (1) and (2) above.  (Pl.'s Mot. for Summ. J. at 6.)  For the reasons that follow, the Court declines to grant Plaintiff the relief he seeks.[3]

---

[3]  The Court notes that insofar as Plaintiff's Response to Defendants' Motion for Summary Judgment could, broadly construed, be interpreted as requesting additional relief, the Court denies the relief requested.  As to those claims addressed in Defendants' Motion for Summary Judgment, the Court denies relief for the reasons set forth in its discussion of that motion.  As to any claims not directly addressed by Defendants' motion, the Court

AO 72A
(Rev.8/82)

### A.      Claims Challenging "Void Judgment"

Notwithstanding this Court's prior dismissal of Plaintiff's claims

challenging the validity of his conviction and sentence, (see Order of Apr. 16,

2004 [12] at 6-7), Plaintiff continues to complain vigorously that his current

incarceration resulted from a "void" or "illegal" judgment of the state court, and

that Plaintiff has been unable to obtain meaningful judicial review of that

judgment.  These claims were previously (and properly) dismissed as barred by

the doctrine of Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed.

2d 383 (1994) (establishing the principle that the "district court must consider

whether a judgment in favor of the plaintiff would necessarily imply the invalidity

of his conviction or sentence; if it would, the complaint must be dismissed

unless the plaintiff can demonstrate that the conviction or sentence has already

been invalidated.").  While the Court recognizes the strength of Plaintiff's belief

that he has been wrongfully incarcerated, this § 1983 action is not now, nor was

it ever, the proper forum for redress of these grievances.  Despite this Court's

dismissal of those claims as Heck barred, it appears that Plaintiff continues to

---

concludes that, on the record before the Court, Plaintiff has failed to show that he is
entitled to judgment as a matter of law.

use this action in an attempt to obtain additional review of his conviction and sentence by the state courts beyond that provided in his direct appeal and multiple habeas corpus proceedings.  Such relief is clearly inappropriate.  In light of this Court's dismissal of Plaintiff's prior federal habeas corpus petition, (see Foster v. Rewis, Civil Action No. 1:00-cv-1029-RWS (N.D. Ga. filed Apr. 20, 2000)), and the Eleventh Circuit Court of Appeals' denial of his application to file a successive federal habeas corpus petition, the Court will not consider further Plaintiff's arguments directed at the validity of his conviction and sentence.

In light of the foregoing, Plaintiff's requests that this Court (1) declare the procedures employed by the state court unjust and enjoin the state court from further application of those procedures, and (2) compel the state court to docket Plaintiff's motion seeking additional review of his conviction, and waive the filing fees the same, are hereby **DENIED**.  In light of this Court's determination regarding (1) and (2) above, Plaintiff's request that this proceeding be stayed pending Defendants' compliance is **DENIED as moot**. Accordingly, Plaintiff's Motion for Summary Judgment is hereby **DENIED**.

13

**VI.    Defendants' Motion for Summary Judgment**

      **A.    Access-to-Courts Claims**

In the Court's Order reviewing this action for frivolity pursuant to 20

U.S.C. § 1915A, the Court framed the substance of Plaintiff's allegations as

follows:

> Plaintiff claims that Defendants have effectively denied
> him access to the courts by refusing to accept and file
> motions and other pleadings, by refusing to provide
> updated case law to Plaintiff, [and] by refusing to
> either aid or provide legal assistance as required under
> state law. . . .

(Order of Apr. 16, 2004 [12] at 8-9.)  Additionally, Plaintiff alleges that the

Department of Corrections Standard Operating Procedure which requires that

inmates utilizing an inmate account maintain a minimum balance of ten dollars,

and the state law requirement that an inmate account be frozen pending full

payment of all court filing fees, impede his access to the courts.  (See Amended

Compl. ¶ 10.)  A thorough review of the voluminous, and at times confusing,

materials submitted by Plaintiff yields no reason to significantly alter this Court's

construction of Plaintiff's claims.  Therefore, the Court will address

Defendants' Motion for Summary Judgment in relation to the above claims.

14

1.  Failure to provide updated case law or adequate legal assistance

The First Amendment safeguards the right "to petition the Government for a redress of grievances."  U.S. Const. amend. I. To that end, the Supreme Court has held that inmates must be provided "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Lewis v. Casey, 518 U.S. 343, 351, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996) (quoting Bounds v. Smith, 430 U.S. 817, 825, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977)).  However, while the Constitution "guarantees the right of access to the courts . . . , prisoners have no inherent or independent right of access to a law library or to legal assistance." Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir. 1998).  Rather, a prisoner asserting an access-to-courts claim "must show actual injury in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement."  Id.

To state "an access-to-courts claim, 'a plaintiff cannot merely allege a denial of access to a law library or adequate attorney, even if the denial is systemic.' " Id. at 1291 (quoting Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996) (per curiam)).  "Rather, a plaintiff must demonstrate that the lack of a law

library or inadequate access to counsel hindered his 'efforts to proceed with a legal claim in a criminal appeal, postconviction matter, or civil rights action seeking to vindicate basic constitutional rights.' " Id. (quoting Sabers, 100 F.3d at 84). " 'Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.' " Id. (quoting Lewis, 518 U.S. at 355).

Plaintiff's litigation in both the state and federal system challenging the validity of his conviction and sentence clearly falls within the class of cases for which an inmate may state a valid access-to-courts claim. Although Plaintiff repeatedly states that these Defendants have failed to provide adequate legal resources to enable him to present these claims, he has failed to allege any facts which would establish how their failure in this regard actually prejudiced him in the prosecution of his claims. Accordingly, Defendants' Motion for Summary Judgment on these claims is hereby **GRANTED**.

2. Freezing of Plaintiff's inmate account

Plaintiff complains vigorously about, presumptively, provisions of the Georgia Prison Litigation Reform Act ("GA-PLRA"), O.C.G.A. §§ 42-12-1 et seq., which require that, in the event that a prisoner is unable to pay filing fees

16

associated with any action he commences, the prisoner's inmate account shall

be immediately frozen and any future deposits into the account forwarded to the

proper clerk of court until all such filing fees are satisfied.  See O.C.G.A. § 42-

12-14.  Upon full satisfaction of all filing fees due, the freeze on the account is

lifted.  Id.

Plaintiff asserts that the GA-PLRA violates his right of access-to-courts

under the First and Fourteenth Amendments.  In this regard, Plaintiff argues  that

when his account is frozen, he is "unable to make any motions, or do any

mailing, as indigent supplies unconstitutionally low."  (Supp. Compl. ¶ 10; see

also Compl. ¶ 22 (stating that when his account is frozen "[he] can't buy

stamps, paper, etc., and there are no provisions for ample legal supplies.").)[4]

---

[4]  Additionally, construed broadly, Plaintiff appears to complain that the freeze
placed on his inmate account in connection with commencing a court action prevents him
from purchasing personal hygiene items.   As discussed above, prisoners have a
constitutional right of access to the courts.   See, e.g., Bounds, 430 U.S. at 825 (prisoners
must be given "a reasonably adequate opportunity to present claimed violations of
fundamental constitutional rights to the courts.").  Prisoners also have an Eighth
Amendment right to basic hygiene.  See Chandler v. Baird, 926 F.2d 1057, 1065 (11th Cir.
1991) (holding that prisoner was entitled to present claim to jury on whether, inter alia,
failure to provide basic hygiene items violated minimal standards required under Eighth
Amendment).   Thus, it is possible to read Plaintiff's filings as presenting the argument that
he is impermissibly forced to choose between presenting his claims to the courts and
having access to basic personal hygiene items.

Plaintiff's account records demonstrate that some funds from his inmate account
were expended on deodorant soap and a disposable razor.   The GA-PLRA is expressly

Upon reviewing the record, the Court concludes that no genuine issue of fact exists as to whether the GA-PLRA infringes Plaintiff's right of access-to-courts.  As Plaintiff's own filings make clear, he is provided a weekly allotment of five stamps for mailing and twenty sheets of paper.  The Eleventh Circuit has held a prison policy which provided only two stamps per week was adequate to allow an inmate to conduct reasonable litigation.  See Hoppkins v. Wallace, 751 F.2d 1161, 1162 (11th Cir. 1985).  Moreover, Plaintiff has again failed to demonstrate how this policy actually prejudiced the prosecution of meritorious claims.  Wilson, 163 F.3d at 1291; Hopkins, 751 F.2d at 1162 (finding no access-to-courts violation where  plaintiff "presented no evidence . . . that any case was dismissed or that any sanction was imposed by the courts due to the

---

premised on the assumption the basic needs of all prisoners are provided for at taxpayer expense.  See O.C.G.A. § 42-12-2 ("In light of the fact that all prisoners' needs are provided at city, county, or state expense, a prisoner cannot claim that his or her financial status or security would be compromised by a requirement to pay court costs and fees.").  Indeed, the Court would find it deeply troubling if prisoners were, in fact, presented with the Hobson's choice of litigating meritorious claims for constitutional violations and obtaining those personal hygiene items so basic as to be required under the Eighth Amendment.  Plaintiff does not allege, however, that he was actually denied such basic personal hygiene items in violation the Eighth Amendment, and in any event, such a claim is not before the Court.   Regarding his access-to-courts claim, moreover, because Plaintiff has failed to demonstrate that he suffered actual prejudice in the prosecution of meritorious claims, that claim fails as a matter of law.

impact of the stamp policy."). Accordingly, Defendants' Motion for Summary Judgment on these grounds is hereby **GRANTED**.[5]

### 3. Refusal to accept and file motions and other pleadings

Plaintiff alleges that Defendant Moore has refused to docket multiple mandamus actions, and has returned Plaintiff's filings undocketed and without explanation as to why they were returned. (See Compl. ¶ 26; Supp. Compl. ¶ 9.) Plaintiff further alleges that these filings "were prepared by the state rules and included all necessary documents in support of [his] claims."[6] (Compl. ¶ 26.) Defendants have not addressed these allegations in their Motion for Summary Judgment, and as such, have failed to establish the absence of a genuine issue of fact on this ground. Accordingly, Defendants' Motion for Summary Judgment on this ground is hereby **DENIED**. That said, the Court recognizes that Plaintiff's filings to this point have been both voluminous and

---

[5] Insofar as Plaintiff complains that the requirement that he maintain a minimum balance of ten dollars in his inmate account violates his right of access-to-courts, the Court concludes, for the reasons set forth above, that it does not.

[6] Liberally construed, the Court reads Plaintiff's filings as indicating that these motions were directed to his extraordinary motion for new trial based on his contention that he was entitled to a determination of competency under Georgia law. The Court considers these claims to be sufficiently similar to an appeal or a petition for writ of habeas corpus such that they may serve as the basis for an access-to-courts challenge.

confusing.  Moreover, this appears to be the type of claim which is amenable to determination on summary judgment.  Therefore, Defendants are hereby granted leave to file an additional motion for summary judgment on this ground.  Should Defendants desire to so move, their motion should be filed with the Court not later than twenty (20) days from the entry of this Order.

**B.    Equal Protection Claims**

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of laws." U.S. Const. amend. XIV, § 1.  "The central mandate of the equal protection guarantee is that '[t]he sovereign may not draw distinctions between individuals based solely on differences that are irrelevant to a legitimate governmental objective.' "   Lofton v. Sec'y of Dept. of Children and Family Svcs., 377 F.3d 1275, 1277 (11th Cir. 2004) (quoting Lehr v. Robertson, 463 U.S. 248, 265, 103 S. Ct. 2985, 77 L. Ed. 2d 614 (1983)).

" '[I]f a law neither burdens a fundamental right nor targets a suspect class,' it does not violate the Fourteenth Amendment's Equal Protection Clause . . . 'so long as it bears a rational relation to some legitimate end.' "  Rivera v. Allin, 144

20

F.3d 719, 727 (11th Cir. 1998) (quoting <u>Romer v. Evans</u>, 517 U.S. 620, 631, 116 S. Ct. 1620, 134 L. Ed. 2d 855 (1996)).

As the Eleventh Circuit has made clear, under rational basis review, a court must undertake a two-part inquiry.

> The first step in determining whether legislation survives rational-basis scrutiny is identifying a legitimate government purpose-a goal-which the enacting government body could have been pursuing. The actual motivations of the enacting governmental body are entirely irrelevant. . . .  The second step of rational-basis scrutiny asks whether a rational basis exists for the enacting governmental body to believe that the legislation would further the hypothesized purpose. The proper inquiry is concerned with the existence of a conceivably rational basis, not whether that basis was actually considered by the legislative body.

<u>Joel v. City of Orlando</u>, 232 F.3d 1353, 1358 (11th Cir. 2000) (quoting <u>Haves v. City of Miami</u>, 52 F.3d 918, 921-22 (11th Cir. 1995) (internal quotations and citations omitted)).

### 1.  Parole decisions

Plaintiff alleges that similarly situated prisoners who are not indigent are treated more favorably with regard to the grant of parole in violation of the Equal Protection Clause.  "To establish an equal protection claim, a prisoner must

demonstrate that (1) 'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest." Jones v. Ray, 279 F.3d 944, 947 (11th Cir. 2001) (quoting Damiano v. Fla. Parole & Prob. Comm'n, 785 F.2d 929, 932-33 (11th Cir. 1986) (per curiam)).

After providing an adequate time for discovery, and upon a thorough review of Plaintiff's filings, the Court concludes that Plaintiff has failed to proffer any evidence that Defendants apply the parole guidelines in an unequal fashion based on financial condition. As discussed in the context of Plaintiff's Ex Post Facto claim, and as the Eleventh Circuit has repeatedly recognized, Parole Board members exercise significant discretion in assessing the propriety of granting parole to a given individual. Under Georgia law, the Parole Board is "charged with the duty of determining which inmates serving sentences imposed by a court of this state may be released on pardon or parole and fixing the time and conditions thereof." O.C.G.A. § 42-9-20. Parole Board members are duty-bound to "personally [] study the cases of those inmates whom the board has power to consider so as to determine their ultimate fitness for such relief as the board has power to grant." Id. Moreover, Georgia law provides that the Parole

22

Board must gather "all pertinent information on the person in question."[7]  Only after doing so, and "upon consideration, the board shall make its findings and determine whether or not the person shall be granted a pardon, parole, or other relief within the power of the board."  O.C.G.A. § 42-9-43.

As Plaintiff has not presented any evidence of a Parole Board rule which expressly classifies individuals based on impecuniousness, evidence that Defendants applied apparently neutral parole rules in an unequal manner is essential to Plaintiff's Equal Protection claim.  Although Plaintiff has provided

---

[7] This information includes:

> (1) A report by the superintendent, warden, or jailer of the jail or state or county correctional institution in which the person has been confined upon the conduct of record of the person while in such jail or state or county correctional institution; (2) The results of such physical and mental examinations as may have been made of the person; (3) The extent to which the person appears to have responded to the efforts made to improve his social attitude; (4) The industrial record of the person while confined, the nature of his occupations while so confined, and a recommendation as to the kind of work he is best fitted to perform and at which he is most likely to succeed when and if he is released; and (5) The educational programs in which the person has participated and the level of education which the person has attained based on standardized reading tests.

O.C.G.A. §42-9-43.   Additionally, the Parole Board "may also make such other investigation as it may deem necessary in order to be fully informed about the person," and "may have the person appear before it and may personally examine him."  Id.

extensive lists of other prisoners, their crimes, and their parole dates in an effort

to show he has been treated differently, in view of the numerous factors

considered by the Parole Board members in making their determination, this

evidence is wholly insufficient to establish that these individuals were similarly

situated, much less to establish that the decision in Plaintiff's case was based on

an impermissible factor.  In view of these shortcomings, Plaintiff has not "set

forth specific facts showing that there is a genuine issue for trial," and as such,

Defendants' Motion for Summary Judgment on these claims is hereby

**GRANTED**.  FED. R. CIV. P. 56(e); <u>see also</u>, <u>Celotex</u>, 477 U.S. at 322 ("[T]he

plain language of Rule 56(c) mandates the entry of summary judgment, after

adequate time for discovery . . ., against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial.").

    2  Freezing of Plaintiff's inmate account

      Plaintiff contends that the GA-PLRA requirement that his account be

frozen  unconstitutionally impedes his access-to-courts in comparison to those

similarly situated prisoners with greater financial assets in violation of the Equal

Protection Clause.  First, for the reasons set forth in Part VI.B.2, <u>supra</u>, the

policy of freezing inmate accounts does not burden Plaintiff's fundamental right of access-to-courts because he is provided with reasonably adequate legal materials, free of charge, to allow for the presentation of his claims to the courts.  Second, indigent prisoners are not a suspect class.  See Rivera, 144 F.3d at 719 (so holding and collecting cases).  Therefore, the Court reviews the policy under the rational basis standard.

The GA-PLRA easily survives rational basis review.  Although the first step of rational basis review only requires the Court to "identify[] a legitimate government purpose-a goal-which the enacting government body could have been pursuing," Mitchell v. Farcass, 112 F.3d 1483, 1488 (11th Cir. 1997), the Court need not engage in speculation here.  The statute itself reflects that it was enacted in an attempt to mitigate the rapidly rising costs of litigation imposed by frivolous prisoner lawsuits and to "relieve some of the burden placed on Georgia cities, counties, state agencies, the courts, and the Department of Corrections."  O.C.G.A. § 42-12-2(1).  The requirement that prisoners, as any other citizen, pay the full filing fee associated with the initiation of litigation is expressly intended to compel prisoners to "balance the strength of their case against the reality of court costs, filing fees, and the potential consequences of

filing a frivolous or meritless lawsuit." O.C.G.A. § 42-12-2(2). The requirement that the prisoner's inmate account be frozen until such fees are paid is expressly intended to "hold the prisoner responsible for court costs and fees by seizing any future deposits into the account."

The legislative desire to curtail frivolous and abusive prisoner lawsuits is undeniably a legitimate government purpose. The requirement that an inmate's account be frozen in order to facilitate the recovery of sums owed is similarly legitimate. Clearly, the Georgia General Assembly had a rational basis to believe that the fee requirements of the GA-PLRA, in conjunction with the freeze placed on inmate accounts, would further these objectives. See id. (holding Congress had rational basis to believe fee requirements of federal Prison Litigation Reform Act would curtail abusive prisoner tort, civil rights and conditions litigation and collecting other circuit court cases so holding). Therefore, Defendants' Motion for Summary Judgment on this claim is hereby **GRANTED**.

3. Minimum Account Balance

Plaintiff contends that Defendants policy which requires that he maintain a minimum balance of ten dollars in his inmate account violates his rights under the Equal Protection Clause. For the reasons set forth above, this regulation

neither burdens a fundamental right nor implicates a suspect class.  As such, it too will be examined under the rational basis standard.

Pursuant to statute, the Commissioner of the Department of Corrections may establish, by rules or regulations, criteria for a reasonable deduction from money credited to the account of an inmate to repay certain costs associated with housing an inmate.  See, e.g., O.C.G.A. § 42-5-55.[8]  The minimum balance requirement was enacted pursuant to statutory and regulatory authority assertedly for the purpose of ensuring that at least some funds are available upon release to cover these legally imposed fees and costs.  See Ga. Comp. R. & Regs. 125-2-4.22 (providing that the Commissioner of the Department of Corrections "shall promulgate procedures to allow for reasonable deductions to

---

[8]  Under this statute, for example, the Commissioner is authorized to establish reasonable means to ensure the

[r]epay[ment of] the costs of:(1) (A) Public property or private property in the case of an inmate housed in a private correctional facility willfully damaged or destroyed by the inmate during his or her incarceration; (B) Medical treatment for injuries inflicted by the inmate upon himself or herself or others; (C) Searching for and apprehending the inmate when he or she escapes or attempts to escape; such costs to be limited to those extraordinary costs incurred as a consequence of the escape; or (D) Quelling any riot or other disturbance in which the inmate is unlawfully involved; or (2) Defray the costs paid by the state or county for medical treatment for an inmate when the request for medical treatment has been initiated by the inmate.

be made from money credited to prisoner accounts for the purpose of restitution" and that "the Commissioner is authorized to implement a mandatory minimum balance applicable to all inmate accounts" "[f]or the purpose of administering deductions from money credited to inmate accounts."); (Defs.' Br. in Supp. of Mot. for Summ. J. at 11-14, 19-20).

The Court concludes that the recovery of the costs set forth above from incarcerated individuals is a legitimate government purpose and the means by which the State has elected to effectuate that policy is rationally related to serve that purpose.[9]  As Plaintiff has presented no evidence that the policy is applied differentially to him, the policy does not run afoul of the Equal Protection Clause.  Therefore, Defendants' Motion for Summary Judgment on this claim is hereby **GRANTED**.

---

[9] The Court is not unaware that certain fees and costs may not be deducted from an inmate's account when the balance in that account is less that $10.00, see, e.g., 28 U.S.C. § 1915(a)(2) (providing relief from payment of federal filing fees when balance in account is less than $10); O.C.G.A. § 42-5-55 (providing relief from state-imposed costs when balance is less than $10), and that a requirement that prisoners maintain a minimum balance of $10.00 necessarily renders them subject to these statutorily imposed fees.  While this policy may interfere with the implicit legislative determination that incarcerated individuals need not totally deprive themselves of those small amenities of life which they are permitted to acquire in prison beyond food, clothing, and lodging already furnished by the state, see Losee v. Maschner, 113 F. Supp. 2d 1343 (S.D. Iowa 1998), the Court cannot say that the minimum balance requirement fails under rational basis review.

28

### C.     Due Process Claims

1.  Parole decisions

Insofar as Plaintiff's filings may be read as claiming that the Parole Board's decision in his case violates the Due Process Clause, that claim fails as a matter of law.  As an initial matter, it is well-settled that there is no federal constitutional right to parole.  Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979). "Only when a state maintains a parole system that creates a legitimate expectation of parole does it establish a liberty interest in parole that is subject to the protections of the Due Process Clause." Jones v. Ray, 279 F.3d 994, 946 (11th Cir. 2001) (quoting Greenholtz, 442 U.S. at 12).  In Sultenfuss v. Snow, 35 F.3d 1494 (11th Cir. 1994) (en banc), the Eleventh Circuit expressly held that under Georgia law, an inmate has no liberty interest in parole.  Id. at 1502.  As Plaintiff's claim is specifically foreclosed by the Eleventh Circuit's decision in Sultenfuss, Defendants Motion for Summary Judgment on this claim is hereby **GRANTED**.

2.  Minimum account balance

Although Plaintiff's filings on this point are far from clear, he appears to

AO 72A
(Rev.8/82)

complain that the minimum account balance requirement violates his rights under the Due Process Clause.[10]  As best the Court can determine, Plaintiff asserts that he is being unlawfully denied access to funds which are his own and that this constitutes a "taking" under the Due Process Clause.

In Turner v. Safley, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987), the Supreme Court held that when a prison regulation impinges upon an inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.  Id. at 89.  To determine whether a prison policy is reasonable, district courts must determine (1) whether there is a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forth to justify the regulation; (2) whether, under the restriction imposed, prisoners have alternative means for exercising the asserted constitutional right; (3) the impact that accommodating the asserted constitutional right will have on prison staff, inmates, and the allocation of

---

[10]  Insofar as Plaintiff complains that the minimum balance requirement prevents him from accessing funds which are lawfully his own, and that through this, he has been denied "due process" because he is prevented from presenting his claims to the courts, the Court has addressed this complaint directly in reference to access-to-courts claim.  See supra, Part VI.A.2, n.5.

prison resources; and (4) whether the regulation in question is an "exaggerated response" to prison concerns.  Id. at 89-91.

Defendants, in their Motion for Summary Judgment, properly set forth the Turner factors, and identify their application as controlling on this claim. Unfortunately, Defendants only cursorily address two of those factors–whether there is a rational connection between the prison regulation and its justification, and whether Plaintiff has an alternative means of accessing his property. Defendants do not address factors three and four, and as such, the Court is unable to properly evaluate the regulation to determine whether it satisfies the requirements of Turner and its progeny.  Accordingly, Defendants Motion for Summary Judgment on this claim is hereby **DENIED**.  However, because this appears to be a claim amenable to resolution on summary judgment, and so doing could expedite this litigation, Defendants are hereby granted leave to file an additional motion for summary judgment on this issue.  Should Defendants desire to so move, their motion should be filed with the Court not later than twenty (20) days from the entry of this Order.

D.    **Ex Post Facto Claim**

Plaintiff alleges that the Parole Board applied new policies both to deny

31

him parole and to decrease the frequency with which he is eligible for parole review in violation of the <u>Ex Post Facto</u> Clause of the United States Constitution.  <u>See</u> U.S. Const. art. I, § 10, cl. 1.

The <u>Ex Post Facto</u> Clause bars the states from enacting laws which, by retroactive operation, increase the punishment for a crime after its commission. <u>Garner v. Jones</u>, 529 U.S. 244, 249, 120 S. Ct. 1362, 146 L. Ed. 2d 236 (2000). "Retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept." <u>Id.</u> at 250.  To prove that a retroactively applicable parole board procedure violates the <u>Ex Post Facto</u> Clause, a prisoner must show that the challenged action creates " 'a sufficient risk of increasing the measure of punishment attached to the covered crimes.' " <u>Id.</u>  (quoting <u>Cal. Dept. of Corr. v. Morales</u>, 514 U.S. 499, 509, 115 S. Ct. 1597, 131 L. Ed. 2d 588 (1995)).

The crimes for which Plaintiff is currently incarcerated were committed in 1993 and his conviction pursuant to a guilty plea was entered in 1994.  Plaintiff is currently serving a life sentence.  In 2001, Plaintiff was considered for parole pursuant to O.C.G.A. § 42-9-45(b), which at the time he committed his offenses, just as it does today, provided: "Inmates serving sentences

32

aggregating 21 years or more shall become eligible for consideration for parole upon completion of the service of seven years."  Pursuant to Parole Board regulation § 475-3.05, a majority of the Parole Board voted to defer reconsideration for eight years, citing the "nature and circumstances" of Plaintiff's offenses.[11]  The rule under which inmates may be deferred for up to eight years was duly adopted and made effective on February 1, 1985.  See Ga. Comp. R. & Regs. § 475-3-.05(2) (1985) ("Reconsideration . . . shall take place at least every eight years"); see also Garner, 529 U.S. at 254 (quoting same). Because the policy about which he complains was in effect at the time he committed the crimes for which he is incarcerated, Plaintiff has failed to make any showing that the Parole Board retroactively applied a new rule which created a significant risk of prolonging his incarceration.  Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's Ex Post Facto claims is hereby

---

[11] Under Parole Board Policy, inmates serving life sentences who are denied parole may be set for reconsideration up to eight years from the date of the last denial when, in the Parole Board's determination, it is not reasonable to expect that parole would be granted in the intervening years.  Inmates set-off under this policy remain free to petition the Parole Board for expedited review should circumstances change, or the Parole Board receives new information that would warrant sooner review.  (Masters Aff. ¶ 8.)

**GRANTED**.[12, 13]

**V.     Plaintiff's Motion for Case Status and Judicial Oversight**

Plaintiff, in his motion, requests that he be provided with a status update regarding the motions presently pending before this Court.  In view of the Court's resolution of those motions today, that request is **DENIED as moot**.

Plaintiff additionally requests that this Court exercise "judicial oversight" with respect to currently pending state-court litigation.  Apparently, Plaintiff requests that this Court compel Clayton Judicial Circuit Chief Judge Stephen E. Boswell to take jurisdiction over an action pending in that circuit.  This request is **DENIED**.

---

[12] Plaintiff appears, at times, to contend that the ten dollar minimum account balance requirement constitutes a "fine" and thus violates his rights under the Ex Post Facto Clause. (See Compl. [1] at ¶ 27.)  In view of the structure of the inmate account program, the fact that Plaintiff is entitled to have all monies maintained in his account, including the ten dollar minimum balance, returned to him upon release, and that Plaintiff may close his inmate account at any time, the Court does not view this requirement as imposing a fine of any sort.  As such, the Court does not address this requirement here, but rather examines its implications in the context of Plaintiff's other claims.

[13] Plaintiff has provided extensive lists of other prisoners, their crimes, and their parole dates in an effort to somehow show that a new rule has been applied to him.  Of course, as the Supreme Court recognized in Garner, the Parole Board exercises significant discretion and considers numerous factors in determining whether parole is appropriate. See Garner, 529 U.S. at 253-54.  Therefore, these lists of prisoners, crimes and dates add nothing to the determination of whether a new policy which creates a sufficient risk of increasing the punishment for Plaintiff's crimes has been applied to Plaintiff retroactively.

## Conclusion

Plaintiff's Motion for Summary Judgment [75] is hereby **DENIED**; (ii) Defendants' Motion for Leave to File Excess Pages [80] is **GRANTED** *nunc pro tunc*; (iii) Defendants' Motion for Summary Judgment [82] is hereby **GRANTED IN PART and DENIED IN PART**; (iv) Plaintiff's Motion for Copy of Defendants' Motion for Summary Judgment and Motion for Extension of Time [84] is **GRANTED IN PART and DENIED IN PART**; and (v) Plaintiff's Motion for Case Status and Judicial Oversight [86] is hereby **DENIED**.   Where Defendants have been granted leave to file an additional motion for summary judgment, that motion should be filed with the Court not later than twenty (20) days from the entry of this Order.

**SO ORDERED** this  28th  day of March, 2006.

/s/ Richard W. Story
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

35